UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| COLE A. WOLAK, | ) | CASE NO. 5:16-CR-00067 |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| RESPONDENT. | ) | |

Before the Court is the motion of pro se petitioner Cole A. Wolak ("Wolak") to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Doc. No. 22 ["Mot."].) Respondent United States of America (the "government") opposes the motion (Doc. No. 24 ["Opp'n"]), and Wolak has filed a reply. (Doc. No. 25 ["Reply"].) For the reasons that follow, Wolak's motion is DENIED.[1]

---

[1] Wolak also filed a supplement to his petition asking this Court to consider the Eighth Circuit's decision in *United States v. Morrissey*, 895 F.3d 541 (8th Cir. 2018). (Doc. No. 27.) Wolak asks this Court to consider *Morrissey* for a completely new argument: that Wolak's convictions for both possession of child pornography and for receipt and distribution of child pornography violate double jeopardy. "The Double Jeopardy Clause 'protects against multiple punishments for the same offense.'" *United States v. Ehle*, 640 F.3d 689, 694 (6th Cir. 2011) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969)).

In *Morrissey*, the Eighth Circuit held, as the Sixth Circuit has also held, that possession is a lesser included offense of receipt. *Morrissey*, 895 F.3d at 548; *see United States v. Hutchinson*, 448 F. App'x 599, 603–04 (6th Cir. 2012). However, "'while possession of child pornography is generally a lesser-included offense of receipt of child pornography, conviction under both statutes is permissible if separate conduct is found to underlie the two offenses.'" *Hutchinson*, 448 F. App'x at 603 (quoting *United States v. Dudeck*, 657 F.3d 424, 429 (6th Cir. 2011)).

Having considered *Morrissey* and *Hutchinson*, the Court finds both inapplicable to Wolak's case. In *Morrissey* and *Hutchinson*, the facts underlying the charges were the same. Here, the facts underlying Wolak's two charges are different. As the Court discussed at the sentencing hearing, the time frames underlying the two counts are different. (Doc. No. 18, Sentencing Hr'g Tr. at 125–28.) Further, Wolak's conviction for Count 1, receipt and distribution, is based on conduct from on or about December 1, 2015, through on or about January 18, 2016, involving images Wolak received from the Internet, while Wolak's conviction for Count 2, possession, is based on conduct from on or about February 3, 2016, when a search of Wolak's house recovered more images on a USB storage device, a secure digital card, an iPod, and a cell phone. (Doc. No. 6, Indictment at 15–16.) Therefore, Wolak's conviction for receipt and distribution and possession, involving different facts, does not violate double jeopardy.

I.   BACKGROUND

On March 1, 2016, a federal grand jury returned a two-count indictment charging Wolak with one count of receipt and distribution of visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2) (Count 1), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count 2). (Doc. No. 6, Indictment.) Count 1 was based on allegations that between December 1, 2015, and January 18, 2016, Wolak used his cell phone to connect to the Internet and visit a Russian photo-sharing website where he met other individuals who were interested in trading child pornography. (Doc. No. 17 ["Plea Hr'g Tr."] at 112–13.[2]) Wolak traded images and videos depicting children engaged in sexually explicit conduct with a variety of other individuals around the county and around the world. (*Id.* at 113.)

Count 2 was based on a February 3, 2016 search of Wolak's home, during which various items were seized including two computers, a USB storage device, an iPod, and a cell phone. (*Id.*) Additionally, Wolak turned over an SD card to law enforcement. (*Id.*) Forensic analysis completed on each of the items revealed that the items contained images and/or videos of real children engaged in sexually explicit conduct, including children as young as infants. (*Id.* at 113–14.) The images and videos had been transported in interstate and foreign commerce and Wolak was aware of the nature and content of those images. (*Id.* at 114.)

On May 2, 2016, Wolak pleaded guilty to both counts. (Plea Hr'g Tr. at 116–17.) During the preparation of Wolak's presentence investigation report ("PSR"), Wolak admitted to having sexual contact with three children, including two of his nieces and his ex-girlfriend's daughter. (Doc. No. 11 ["PSR"] at 58–59; Doc. No. 18 ["Sentencing Hr'g Tr."] at 136.)

The PSR determined that the base offense level for Wolak's serious crimes was twenty-

---

[2] All page number references are to the page identification number generated by the Court's electronic docketing system.

2

two (22), and that there were several enhancements that applied. Relevant to this motion, the Court applied an increase for Wolak's pattern of activity involving the sexual abuse or exploitation of a minor ("pattern-of-activity") (five (5) levels). Wolak's final total offense level in the PSR was forty-two (42). (*See* PSR at 60-62.)

Wolak's counsel made two objections to the PSR: (1) an objection to the pattern-of-activity sentencing enhancement and (2) an objection to Wolak's sentences for the two offenses running consecutively. (*Id.* at 71.) At Wolak's sentencing hearing, Wolak's counsel renewed these objections and made an argument to this Court. (Sentencing Hr'g Tr. at 122–23, 125–26.) After hearing the arguments on behalf of Wolak and the responses of the government, this Court, in its discretion, overruled both objections.

At the sentencing hearing, Wolak's counsel also reiterated to the Court the "terrifying nightmare" Wolak experienced as a child, Wolak's remorse and acceptance of responsibility for his crimes, and the support he had from his sister, who Wolak's counsel noted were present at the sentencing hearing. (*Id.* at 137–40.) Wolak also spoke at his sentencing hearing and took the opportunity to apologize to his victims, specifically naming his nieces and his ex-girlfriend's daughter. (*Id.* at 140–42.)

Based on Wolak's voluminous collection of child pornography images, Wolak's admission of previous sexual contact with minors, the risk Wolak posed to children, and his need for mental health treatment, balanced against Wolak's limited criminal record, the fact that up until the time of his arrest Wolak held a job and served in the armed forces with an honorable discharge, his horrific childhood, and the abuse he suffered, the Court employed a two-level variance and sentenced Wolak to a term of imprisonment of 240 months on Count 1 and 60 months on Count two, to be served consecutively for an aggregate term of 300 months imprisonment. (*Id.* at 145–

48.)

Wolak appealed his sentence to the Sixth Circuit. The Sixth Circuit affirmed this Court's judgment. Wolak then filed this motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The government filed a brief in opposition and Wolak filed a response. The matter is ripe for the Court's review.

## II. STANDARD OF REVIEW

A federal prisoner may attack the validity of his sentence by filing a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 in the district court where he was sentenced. Section 2255 sets forth four grounds upon which a federal prisoner may state a claim for relief: "[1] the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] [the sentence] is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

A criminal defendant may not utilize a § 2255 motion as a substitute for a direct appeal. *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003); *Capaldi v. Pontesso*, 135 F.3d 1122, 1124 (6th Cir. 1998) ("An application under § 2255 . . . should not be considered a substitute for direct appeal."). To assert a claim not raised on direct appeal, a petitioner ordinarily must show cause for the default and prejudice. *See Bousley v. United States*, 523 U.S. 614, 622, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998); *United States v. Frady*, 456 U.S. 152, 167–69, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982).

A petitioner who entered a guilty plea must show an error of constitutional magnitude that had a substantial and injurious effect or influence on the proceedings. *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710,

123 L. Ed. 2d 353 (1993)). Therefore, a court may only grant relief under § 2255 if the petitioner demonstrates "'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.* (quoting *Davis v. United States*, 417 U.S. 333, 346, 94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974)). A petitioner further bears the burden of articulating sufficient facts to state a viable claim for relief under § 2255. Vague and conclusory claims which are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant relief. A § 2255 motion may be dismissed if it only makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972) (per curiam); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961).

### III. DISCUSSION

In his § 2255 motion, Wolak contends that he is entitled to relief because (1) his counsel rendered ineffective assistance, and (2) the enhancement applied for a pattern of activity involving the sexual abuse of a minor violated Wolak's due process rights.

#### A. Ineffective Assistance of Counsel

Wolak's contends his trial counsel was ineffective for several reasons: failing to perform meaningful investigation into the offense, character of the defendant, or mitigating factors; believing Wolak should be convicted; not discussing possible defenses; indicating counsel would not take Wolak's case to trial; failing to review the projected advisory guidelines, failing to object to enhancements and errors in the PSR; and failing to object to the reasonableness of Wolak's sentence. (Mot. at 182–84.)

Under the familiar ineffectiveness standard, a petitioner must demonstrate that counsel's performance was deficient, *and* that this deficient performance caused prejudice to the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To

5

demonstrate that counsel's performance was deficient, a petitioner must show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment." *Id*. To establish that the deficient performance caused prejudice to the petitioner, he must show that the counsel's errors were so serious that the petitioner was deprived a fair trial. *Id*. Essentially, a petitioner must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

A criminal defendant is entitled to effective assistance of counsel during the plea and sentencing process. *See Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). In the context of a guilty plea, an attorney provides ineffective assistance by performing outside "the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970). While Wolak does not have to demonstrate that he would have prevailed at trial, a petitioner alleging ineffective assistance of counsel in connection with his guilty plea must establish both deficient performance and that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see Griffin v. United States*, 330 F.3d 733, 737 n.1 (6th Cir. 2003).

   1. **<u>Plea Stage</u>**

Wolak contends his counsel was ineffective at the plea stage because his counsel believed Wolak should be convicted; did not discuss possible defenses; indicated counsel would not take Wolak's case to trial; and failed to review the projected advisory guidelines. (*See* Mot. at 182–84.) Wolak also contends his counsel for ineffective at the plea stage because his counsel said Wolak faced a life sentence if Wolak went to trial. Wolak claims, "[h]ad . . . Wolak realized [a] life

sentence was not possible, and had he realized that his attorney's advice was deficient and coercive, he could have rejected the plea and gone to trial." (Reply at 206.)

Wolak cannot prevail on his claim that his trial counsel was ineffective at the plea stage because Wolak fails to establish "but for" any alleged ineffectiveness, Wolak would not have pleaded guilty. Wolak's contention that "[h]ad . . . Wolak realized [a] life sentence was not possible, and had he realized that his attorney's advice was deficient and coercive, he could have rejected the plea and gone to trial[,]" (Reply at 206), is completely without merit. At the plea hearing—before Wolak pleaded guilty—this Court explained the potential sentence range to Wolak.

> THE COURT: Do you understand that the statutory penalties for [Count 1] are a minimum term of imprisonment of five years and a **maximum** term of 20 years?
>
> [WOLAK]: Yes, Your Honor.
>
> . . .
>
> THE COURT: Do you understand that the statutory penalties for [Count 2] are a **maximum** term of imprisonment of 20 years . . . .
>
> [WOLAK]: Yes, Your Honor.
>
> . . .
>
> THE COURT: All right. So the example we're looking at on the sentencing table is criminal . . . offense level 42, criminal history category I. The advisory guidelines range would be 360 months to life. **However, because both of the offenses charged in the indictment have 20-year maximums, that would make the guideline range 360 to 480 months**. Do you understand that?
>
> [WOLAK]: Yes, Your Honor.

(Plea Hr'g Tr. at 99–100, 108 (emphasis added).)

Wolak cannot now contend that he would not have pleaded guilty had he known life imprisonment was not a possible sentence because Wolak *did* know life imprisonment was not a

7

possible sentence before he pleaded guilty. When a defendant challenges the validity of a plea, the representations of the defendant, his lawyer, the prosecutor, and the judge "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977). Such "[s]olemn declarations in open court carry a strong presumption of verity." *Id*. at 74. Subsequently presented conclusory allegations that fly in the face of the record are subject to summary dismissal. *Id*. Here, Wolak's declaration in open court that he understood the maximum sentence for each of his charges to be twenty years trumps his conclusory statement that thought life imprisonment was a possible sentence.

Further, this Court questioned Wolak about his defense counsel and Wolak's satisfaction with his counsel's representation:

> THE COURT: Have you discussed this case and this plea in detail with your attorney, and has your attorney advised you of your constitutional and other rights, the nature of the charges, the elements of the offenses that the government would have to prove at trial, the evidence that the government would present at trial, **possible defenses that you might have**, **the advisory sentencing guidelines** and other aspects of sentencing, the potential loss of civil rights and privileges such as the right to vote, the right to serve on a jury and the right to possess firearms, and other potential consequences of pleading guilty in this case?
>
> [WOLAK]: Yes, Your Honor.
>
> THE COURT: Are you fully satisfied with the legal services and advice provided to you by your attorney?
>
> [WOLAK]: Yes, Your Honor.
>
> . . .
>
> THE COURT: Has anyone forced you, coerced you, or threatened you in any way to get you to enter this plea?
>
> [WOLAK]: No, Your Honor.
>
> THE COURT: Is your plea of guilty being made freely and voluntarily, sir?
>
> [WOLAK]: Yes, Your Honor.

(Plea Hr'g Tr. at 114–15 (emphasis added).)

Like Wolak's statements that he understood the maximum penalty to be twenty years for each offense, Wolak cannot now contend in conclusory fashion that he was coerced into pleading guilty when he made no such indication before this Court.

Nowhere else in his motion or in his reply brief does Wolak contend that but for his counsel's alleged failures he would not have pleaded guilty. Instead Wolak contends that because of his counsel's alleged failures the Court imposed a longer sentence. (Mot. at 184 ("[Defense counsel] was ineffective, and that ineffectiveness resulted in the [C]ourt imposing a sentence with incorrect and incomplete information. This caused a greater than necessary sentence.").) However, this is not the standard under *Strickland*. Under *Strickland*, when a defendant has pleaded guilty and then seeks relief from the plea on the basis of ineffective assistance of counsel, the defendant must establish that but for his counsel's ineffectiveness he would not have pleaded guilty. In this, Wolak has failed.

As such, Wolak cannot maintain his claim of any alleged ineffective conduct by counsel at the plea stage because Wolak has failed to establish he would not have pleaded guilty but for any of the alleged failures.

### 2. Sentencing Stage

Further, Wolak cannot maintain his claim that his counsel was ineffective at the sentencing stage because Wolak has failed to establish that any of the alleged conduct by his counsel "was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). On collateral review, defense counsel's competence is presumed, and a petitioner must rebut that presumption by proving, not simply alleging, that his "counsel's representation was

9

unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Id.* at 381, 384.

As established by the record cited above, Wolak conceded that his trial counsel did discuss the advisory guidelines and possible defenses. (*See* Plea Hr'g Tr. at 114–15; *see also id.* at 104 (reviewing advisory guidelines and confirming counsel reviewed the guidelines with Wolak).)

The record also establishes that Wolak's trial counsel objected to the pattern-of-activity enhancement and the reasonableness of Wolak serving his sentences consecutively. (*See* Sentencing Hr'g Tr. at 122–26.) Wolak does not point to any other enhancement to which his counsel should have objected, or any other reason for which counsel should have objected to the reasonableness of his sentence. Wolak's purely conclusory arguments cannot support any claim of ineffectiveness.

Wolak's remaining claims of ineffectiveness at the sentencing stage are that his trial counsel failed to object to errors in the PSR and failed to investigate the offense, character of the defendant, and mitigating factors.

Wolak seems to contend that counsel's investigation would have revealed Wolak was lying when he confessed to sexually abusing his nieces and ex-girlfriend's daughter. (Mot at 182; Reply at 205.) This Court is unaware of any case law finding defense counsel to be ineffective for failing to investigate the truthfulness of defendant's own statements, and Wolak has not provided any.

Further, at no point in Wolak's colloquy at his sentencing hearing did Wolak contest his admission, despite extensive discussion at the sentencing hearing about Wolak's admissions. Instead, Wolak alluded to his own guilt and apologized:

> [WOLAK]: I could stand here for the next ten thousand years . . . and I would never be able to apologize to every child in the child pornography industry, **to every single one of my victims, to my nieces, to my ex-girlfriend's daughters** . . . . **I mean, I hurt my nieces,** but my nieces still love me.

(Sentencing Hr'g Tr. at 140–42.)

Given the "highly deferential" scrutiny the Court must apply at this stage in the proceedings, Wolak's simple assertion that trial counsel's failure to object to purported errors in the PSR is insufficient to rebut the presumption that Wolak received effective assistance from counsel.

Lastly, without offering any detail or explanation as to what fruitful information further investigation would have uncovered,[3] Wolak opines that further investigation by his counsel would have revealed a more complete image of Wolak's background and family support and might have resulted in a lower sentence. Such a vague and conclusory argument is insufficient to meet the *Strickland* ineffectiveness standard. The Court also notes that to the extent Wolak's sisters would have testified to their support of Wolak, Wolak's counsel discussed his sister's support and this Court took explicit note of their relationship. (Sentencing Hr'g Tr. at 134, 139.)

Because Wolak cannot meet either prong of the *Strickland* ineffectiveness standard, his claim for ineffective assistance of counsel fails. Further, because the record clearly established that Wolak could not maintain any ineffective assistance of counsel claim, Wolak's request for an evidentiary hearing is also denied.[4]

---

[3] In fact, Wolak concedes that "it is difficult to predict what such an investigation would have uncovered." (Reply at 205.)

[4] If the record includes a factual dispute, the district court "must hold a an evidentiary hearing to determine the truth of the petitioner's claims." *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999). Petitioner is not entitled to a hearing, however, if "the files and records of the case conclusively show that the [petitioner] is entitled to no relief[.]" *Green v. United States*, 65 F.3d 546, 548 (6th Cir. 1995).

### B. Due Process Rights and Pattern-of-Activity Sentencing Enhancement

Wolak contends that his due process rights were violated because this Court applied a pattern-of-activity sentencing enhancement pursuant to U.S.S.G. § 2G2.2(b)(5). Wolak contends this enhancement violates his due process rights because it punishes uncharged conduct.

A pattern of activity involving the sexual abuse or exploitation of a minor is defined as:

> [A]ny combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct.

U.S.S.G. § 2G2.2, cmt. n.1.

Wolak points to the Supreme Court's decision in *Nelson v. Colorado*, 137 S. Ct. 1249, 197 L. Ed. 2d 611 (2017), to support his argument. In *Nelson*, after a defendant was acquitted on retrial of her charges for sexual assault against her children, the defendant moved for a refund of the restitution, fees, and costs she paid while she was incarcerated. *Nelson*, 137 S. Ct. at 1252–53. A second defendant filed a motion to refund restitution, costs, and fees after her convictions relating to attempted sexual assault by force were vacated. *Id. Nelson* did not address the constitutionally of U.S.S.G. § 2G2.2(b)(5), or the sentencing guidelines at all. *Nelson* had absolutely nothing to do with the pattern-of-activity sentencing enhancement, any other sentencing enhancement, or sentencing in general.

The Sixth Circuit has considered if *Nelson* impacts the pattern-of-activity enhancement and found "[*Nelson*'s] proposition . . . does not bar criminal punishment for individuals convicted of a crime. *Nelson* provides that criminal punishment cannot be imposed on individuals found guilty of 'no crime' at all. [Wolak], on the other hand, has been convicted of [two] crimes, and he thus may be criminally punished." *United States v. Chapman-Sexton*, 758 F. App'x 437, 443 (6th Cir. 2018). In *Champman-Sexton*, the defendant made a nearly identical argument to Wolak: that

12

application of the pattern-of-activity sentencing enhancement conflicts with *Nelson* and violates a defendant's due process rights. *Id.* at 442. The Sixth Circuit rejected the defendant's argument and found that the district court properly applied the Sentencing Guidelines in applying the pattern-of-activity sentencing enhancement because considering "conduct underlying" acquitted (or uncharged) acts "is part of a sentencing judge's role in considering the defendant's character and conduct when determining a sentence[,]" so long as the conduct has been proved by a preponderance of the evidence. (*Id.* at 443.)

Here, the pattern-of-abuse enhancement was supported by a preponderance of the evidence. Wolak admitted to prior sexual contact with minors. Wolak now contends these admissions were "false confessions" and the Court should not have applied the enhancement without "extrinsic evidence." As discussed in the previous section, Wolak did not contest his admission until this petition. In fact, at his sentencing hearing, Wolak alluded to this abuse and apologized to "his victims," specifically naming his nieces and his ex-girlfriend's daughter. Nowhere during his sentencing colloquy did Wolak contest his prior admission, despite extensive discussion by his counsel, the government's counsel, and the Court concerning Wolak's admission to a prior abuse of a minor. Given Wolak's admission in the PSR, and further supported by his statements at his sentencing, the Court had sufficient evidence to support the pattern-of-activity enhancement.

Thus, the Court properly considered an enhancement for Wolak's pattern of activity involving the sexual abuse of minors when determining his sentence and the enhancement did not violate Wolak's due process rights. Wolak cannot maintain the claim in his motion for violation of due process rights.

### IV. CONCLUSION

For the aforementioned reasons, Wolak's motion to vacate, set aside, or correct his

sentence is DENIED. Further, the Court CERTIFIES, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: August 6, 2019

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**